**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jim Wyatt Crosby, a married man,<br><br>       Plaintiff,<br><br>vs.<br><br>Christopher J.M. Opperman and Cheryl L. Opperman, husband and wife, individually and doing business as Predator Aviation,<br><br>       Defendants. | No. CIV 06-2012-PHX-MHM<br><br>**ORDER** |

Currently before the Court is Defendant Cheryl Opperman's ("Defendant Opperman") Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue. (Dkt.#8). After reviewing the pleadings and finding oral argument to be unnecessary the Court issues the following Order.

**I. Background**

On August 18, 2006, Plaintiff Jim Wyatt Crosby ("Plaintiff") filed the instant Complaint against Defendant Christopher J.M. Opperman and Defendant Opperman (collectively "Defendants"), husband and wife, alleging claims of Fraudulent Misrepresentation (Count I); Violation of the Consumer Fraud Act (Count II); Breach of Contract (Count III); Breach of Implied Covenant of Good Faith and Fair Dealing (Count IV); Conversion (Counts V and VI), Negligence (Count VII); and Punitive Damages (Count VII). (Dkt.#1). Plaintiff invokes this Court's jurisdiction based upon diversity of the Parties, or 28 U.S.C. § 1332(a)(1).

Plaintiff's Complaint alleges that on or about June 28, 2004, Plaintiff and Defendants entered into an agreement (the "Agreement") for the assembly of a custom Van's RV-10 Aircraft (the "Aircraft") by Defendants for Plaintiff. (Complaint ¶¶ 9-12). According to Plaintiff, the Agreement was executed in Maricopa County, Arizona. (Id. ¶10). Plaintiff alleges that on July 2, 2004, Plaintiff provided Defendants funds to be used for the purchase of parts, tools and supplies necessary to build the Aircraft. (Id. ¶14). After the Defendants relocated to Idaho, Plaintiff alleges that complications arose with respect to completing the Agreement. Specifically, in late 2004 and early 2005 there were "a number of significant disputes between the [Defendants] and [Plaintiff]. (Id. ¶19). After threats by the Defendants to seize work on the Aircraft, and in an effort to "clarify and confirm the obligations required by the Agreement" Plaintiff alleges that he and the Defendants entered into a "Manufacture Agreement" on or about June 1, 2005 (the "Manufacture Agreement."). (Id. ¶21). According to Plaintiff, the Manufacture Agreement provided for additional payments to Defendants as well as additional obligations upon Defendants, such as completion of the project at the end of 12 months and monthly photographic updates. (Id. ¶¶ 23,26). Plaintiff asserts that upon receiving such updates regarding the progress of the Aircraft, Plaintiff made twelve monthly payments of $2,999.25 required by the Manufacture Agreement and two additional payments of this amount demanded by the Defendants pursuant to an "Addendum." (Id. ¶31). In total, Plaintiff estimates that he paid the Defendants at least $47,859.30 for labor and $87,855.75 for parts. (Id. ¶¶32-33). Sometime in July of 2006, Plaintiff asserts he was notified by Defendant Opperman that Defendant Christopher J.M. Opperman had passed away and that the Aircraft would not be completed. (Id. ¶ 34). Plaintiff then traveled to Idaho to retrieve the Aircraft only to find "a collection of almost entirely unassembled airplane parts" and that the parts were apparently for the subject Aircraft. (Id. ¶36). Plaintiff alleges that either the Defendants misrepresented their progress on the Aircraft or that the Defendants attempted to return a different aircraft than the Aircraft bargained for. (Id. ¶¶37-39).

In response to Plaintiff's allegations, Defendant Opperman filed the instant Motion to dismiss challenging this Court's personal jurisdiction. Defendant Opperman avows that prior

1  to moving to Idaho in September, 2004, Defendants were not engaged in the business of
2  assembling or manufacturing of aircraft. (Defendant Opperman Affidavit. (Dkt.#10) ¶ 6).
3  Defendant Opperman asserts that the only relevant contract is the "Manufacture Agreement"
4  which was executed on June 1, 2005, after the Defendants had moved to Idaho and all
5  negotiations leading up that agreement occurred while Defendants resided in Idaho, other
6  than telephone calls and emails between Plaintiff and Defendants. (Id. ¶ 11). While
7  Defendant Opperman concedes that the Parties did engage in negotiations regarding the
8  construction of the subject Aircraft while Defendants resided in Arizona, no agreement was
9  ever reached. (Id. ¶19). Further, Defendant Opperman asserts that to the extent any such
10 relationship existed, it was unequivocally terminated as evidenced by the letter dated
11 February 13, 2005. (Id. ¶21). Only after that relationship was terminated, did Plaintiff and
12 Defendants enter into the "Manufacture Agreement." As such, Defendant Opperman
13 contends that this Court lacks personal jurisdiction over her because the economic
14 relationship between Plaintiff and Defendant Opperman was created and fulfilled entirely
15 outside the state of Arizona. Defendant Opperman asserts that the mere existence of a
16 contract between Plaintiff, an Arizona resident, and Defendant Opperman, residing in Idaho,
17 without more, is insufficient to justify personal jurisdiction.
18   As discussed more fully below, Plaintiff firmly disputes the sworn statements of
19 Defendant Opperman and submits his own declaration regarding the relevant events.
20 (Plaintiff's Response, Dkt#14, and Plaintiff's Declaration, Dkt.#15).
21 **II.  Standard of Review**
22   To establish personal jurisdiction plaintiff has the burden of showing that: (1) the forum
23 state's long-arm statute confers jurisdiction over the nonresident defendant; and (2) the
24 exercise of jurisdiction comports with principles of due process. Omeluk v. Langsten Slip
25 & Batbyggeri A/S, 52 F.3d 267, 269 (9th Cir. 1995). Arizona's long-arm statute confers
26 jurisdiction to the maximum extent allowed by the Due Process Clause of the United States
27 Constitution. Ariz.R.Civ.P. 4.2(a) (2004); Doe v. American Nat'l Red Cross, 112 F.3d 1048,
28

- 3 -

1  1050 (9th Cir. 1997). Therefore, the only issue here is whether the exercise of jurisdiction
2  over Defendants accords with due process. See Omeluk, 52 F.3d at 269.

3  Where an evidentiary hearing is not held, dismissal for lack of personal jurisdiction is
4  appropriate only if the plaintiff has not made a *prima facie* showing of personal jurisdiction.
5  Fields v. Sedgwick Associated Risks, Ltd., 796 F.2d 299, 300 (9th Cir. 1986).
6  "[U]ncontroverted allegations in [plaintiff's] complaint must be taken as true, and 'conflicts
7  between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for
8  purposes of deciding whether a prima facie case for personal jurisdiction exists.'" American
9  Telephone & Telegraph Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir.
10 1996) (citing WNS, Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir. 1989)).

11 **III. Discussion**

12 **A. Personal Jurisdiction Over Defendants**

13 Due Process requires that the nonresident defendant have "certain minimum contacts with
14 [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair
15 play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316
16 (1945) (internal citation omitted). There are two types of personal jurisdiction, general and
17 specific. General jurisdiction exists where a non-resident defendant engages in substantial,
18 continuous or systematic activities within the forum. Perkins v. Benquet Consol. Mining,
19 Co., 342 U.S. 437, 445, 72 S.Ct. 413 (1952). When a defendant's contacts with the forum
20 do not rise to the level required for general jurisdiction, a court may exercise specific
21 jurisdiction over a claim when it arises from the defendant's activities within that forum.
22 Shute v. Carnival Cruise Lines, 897 F.2d 377, 381 (9th Cir. 1990) *rev'd on other grounds*,
23 499 U.S. 585, 111 S.Ct. 1522 (1991).

24 In the instant case, Plaintiff does not argue that general jurisdiction exists with respect to
25 Defendant Opperman, but rather argues that this Court possesses specific jurisdiction over
26 her. Therefore, the Court will address only the issue of specific jurisdiction. The Ninth
27 Circuit utilizes a three-prong test to evaluate the nature and quality of a defendant's contacts
28 for purposes of specific jurisdiction; the test provides:

> 1) the nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections; 2) the claim must be one which arises out of or results from the defendant forum related activities; and 3) exercise of the jurisdiction must be reasonable.

Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000).

All three factors must exist for personal jurisdiction to apply. Omeluk, 52 F.3d at 270.

### (1) Three-Prong Analysis of Specific Jurisdiction

#### (i) Purposeful Availment

The first step of the relevant inquiry in determining if this Court may exercise personal jurisdiction over Defendant Opperman is to determine if she has purposefully availed herself of the privileges of conducting activities in Arizona. This requirement ensures that a defendant is not "haled into court as the result of random, fortuitous or attenuated contacts, or on account of the unilateral acts of third parties." Shute, 897 F.3d at 381. To satisfy this prong, Plaintiff has the burden of establishing that Defendant Opperman has, "performed some act or consummated some transaction within the forum or otherwise purposefully availed [herself] of the privileges of conducting activities in the forum." Bancroft, 223 F.3d at 1086.

Based upon the allegations and evidence presented, the Court finds that Plaintiff is able to satisfy this prong. First, there is directly contradictory evidence regarding Defendant Opperman's assertion that Defendants were not engaged in the airplane manufacturing business while residing in Arizona. Notably, Plaintiff attaches an advertising brochure and other soliciting information of Predator Aviation, Defendants' d/b/a, disclosing an address in Peoria, Arizona. (Plaintiff's Declaration, (Dkt.#15) Exhibits A-C). As such, it appears that Defendants were conducting airplane construction and manufacturing in Arizona prior to relocating to Idaho. Second, it appears that Plaintiff provided partial payment of $8,594 to Defendants with regard to construction of the subject Aircraft while the Defendants were residing in Arizona and that certain parts for use in the project were delivered to Defendants at their Arizona location. (Id. ¶¶8-11). Third, even if the relationship between Defendants

1   and Plaintiff temporarily broke down on February 13, 2005 with Defendants' termination
2   letter, it appears that the relationship may have continued with the subsequent Manufacture
3   Agreement.  (Id. ¶¶16-17).  The fact that the Manufacture Agreement may have been
4   executed while the Defendants resided in Idaho does not somehow bar Plaintiff's ability to
5   satisfy the purposeful availment prong.  For instance, the circumstances surrounding the
6   Manufacture Agreement and prior negotiations suggest that the Defendants availed
7   themselves of the privilege of conducting business within the state of Arizona.  In viewing
8   the contradictory statements between the Parties in the light most favorable to the Plaintiff,
9   it appears that the Manufacture Agreement was a continuation or extension of the original
10  Agreement entered into between the Parties in June of 2004, while Defendants resided in
11  Arizona. (Id. ¶16).  Importantly, the Defendants and Plaintiff appear to have negotiated the
12  terms of the Agreement in Arizona.  Moreover, even after Defendants moved to Idaho they
13  continued to transact business with Plaintiff.  For instance, it appears that Defendants
14  received substantial payments from Plaintiff with regard to the construction of the Aircraft.
15  Thus,  while "an individual's contract with an out-of-state party alone [cannot] automatically
16  establish sufficient minimum contacts to support personal jurisdiction" McGlinchy v. Shell
17  Chemical Co, 845 F.2d 802, 816 n.9 (9th Cir. 1988), courts also look to the circumstance
18  surrounding such contracts, such as "prior negotiations and contemplated future
19  consequences, along with the terms of the contract and the parties' actual course of dealing..."
20  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985).  In doing so, it appears that
21  Defendant Opperman purposefully availed herself of the privileges of conducting business
22  in Arizona with Plaintiff.

23              (ii) "Arising Out Of" Requirement
24      The "arising out of" requirement is also referred to as the "but for" test. "[A] claim arises
25  out of the forum related activities if it would not have happened "but for" the forum related
26  activities."  Shute, 897 F.2d at 387.
27      In applying this factor to the circumstances of the instance case, it is apparent that this
28  factor supports this Court's personal jurisdiction over Defendant Opperman.  For instance,

the alleged cause of action appears to arise out of the Defendants having negotiated, executed, and at least partially performed the Agreement they formed with Plaintiff in Arizona and subsequent Manufacture Agreement. It is these agreements regarding the subject Aircraft that directly implicate Defendant Opperman's contacts with Arizona and that the instant cause of action arises from. In other words, "but for" these forum related activities, the instant claims would not have been asserted. As such, this factor supports this Court's personal jurisdiction.

### (iii) Reasonableness

For specific jurisdiction to be reasonable, "it must comport with fair play and substantial justice." Bancroft, 223 F.3d at 1088 (quoting Burger King Corp v. Rudzewicz, 471 U.S. 462, 476, 105 S.Ct. 2174 (1985)). Several factors are to be considered in determining the reasonableness of exercising specific jurisdiction: (1) the extent of the defendant's purposeful interjection into the forum state; (2) the burden on the defendant in defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient use of judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." Id.

In reviewing these factors, the Court finds that the exercise of personal jurisdiction is reasonable. First, it is important to note that because the Court has found that the "purposeful availment" prong has been established, "the forum's exercise of jurisdiction is presumptively reasonable. To rebut the presumption, a defendant 'must present a compelling case' that the exercise of jurisdiction would, in fact, be unreasonable." Shute, 897 F.2d at 386 (quoting Burger King, 741 U.S. at 476). To rebut this presumption, Defendant Opperman argues that litigation of the instant dispute in this District would cause a significant burden on her as she has since moved to Portland, Oregon since the passing of her husband. Moreover, Defendant Opperman contends that Arizona likely has little interest in litigating this dispute. However, the Court does not find Defendant Opperman's arguments persuasive. While, the Court recognizes the burden of travel to and from Arizona, the Court does not find that this presents

a compelling case defeating personal jurisdiction. With the existence and advantages of modern communication means, the Court believes that travel for Defendant Opperman can, at least, be reasonably minimized. In addition, contrary to Defendant Opperman's argument, the Court believes the state of Arizona has a significant interest in litigating this dispute. For instance, the dispute appears to have its genesis out of negotiations and an agreement entered in Arizona. Also, the Plaintiff still resides in Arizona and it appears that the subject Aircraft has since been relocated to Arizona. See Shute, 897 F.2d at 387 ("A state is deemed to have a strong interest in protecting its citizens against the tortious acts of others."). As such, in weighing all the relevant factors regarding reasonableness, the court finds that the exercise of personal jurisdiction over Defendant Opperman is reasonable.

**B. Venue**

Defendant Opperman contends in her Motion to dismiss that the United States District Court for the District of Arizona is an improper venue for this suit. Specifically, Defendant Opperman asserts that venue is proper either in Idaho, where the Manufacture Agreement was executed or in Portland, Oregon, where Defendant Opperman currently resides. The Court does not agree.

United States Code 28 U.S.C. § 1391(a)(2) provides that a civil action founded only on diversity of citizenship may be brought only in, "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Here, as discussed above, it appears that a substantial part of the events or omissions occurred in Arizona. Moreover, the subject Aircraft and accompanying parts appear to be located in Phoenix, Arizona. Under such circumstances, the Court finds that venue is proper in this District. The fact that certain events also occurred in Idaho and that Defendant Opperman resides in Portland, Oregon does not somehow make venue in this District improper.

**IV. Conclusion**

The Court finds that based upon the allegations and evidence presented, Plaintiff has met his *prima facie* burden demonstrating the propriety of personal jurisdiction over Defendant

Opperman by this Court.    Additionally, the District of Arizona is an appropriate venue to litigate this dispute.

**Accordingly**,

**IT IS HEREBY ORDERED** denying Defendant Opperman's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue. (Dkt. #8)

DATED this 5th day of July, 2007.

_____
Mary H. Murguia
United States District Judge