**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JIM WYATT CROSBY, | No. CV 06-2012-PHX-MHM |
| Plaintiff, | **ORDER** |
| v. | |
| CHRISTOPHER J.M. OPPERMAN and CHERYL L. OPPERMAN, husband and wife, individually and doing business as PREDATOR AVIATION, | |
| Defendants. | |

Currently before the Court is Plaintiff Jim Wyatt Crosby's ("Plaintiff") motion for default judgment against Defendants Christopher J.M. Opperman and Cheryl L. Opperman ("Defendants"). (Dkt. #22). After reviewing the pleadings, the Court issues the following order.

**I.   BACKGROUND & PROCEDURAL HISTORY**

On August 18, 2006, Plaintiff filed a complaint against Defendant, asserting claims of fraudulent misrepresentation (Count I), violation of the Arizona Consumer Fraud Act (Count II), breach of contract (Count III), breach of the implied covenant of good faith and fair dealing (Count IV), conversion (Counts V and VI), negligence (Count VII), and punitive damages (Count VIII). (Complaint, Dkt. #1, pp. 7-11). Plaintiff's complaint sought damages

1 in an amount to be determined at trial, plus an award of attorney's fees and costs. (Id., pp.
2 11-12).

3       Plaintiff's complaint alleges that on or about June 28, 2004, Plaintiff and Defendants
4 entered into an agreement (the "Agreement") for the assembly of a custom Van's RV-10
5 Aircraft by Defendants for Plaintiff. (Complaint ¶¶ 9-12). According to Plaintiff, the
6 Agreement was executed in Maricopa County, Arizona. (Id. ¶10). Plaintiff alleges that on
7 July 2, 2004, Plaintiff provided Defendants funds to be used for the purchase of parts, tools
8 and supplies necessary to build the Aircraft. (Id. ¶14). The Defendants relocated to Idaho,
9 after which Plaintiff alleges that complications arose with respect to completing the
10 Agreement. (Id. ¶19). After alleged threats by Defendants to terminate work on the Aircraft,
11 and in an effort to "clarify and confirm the obligations required by the Agreement," Plaintiff
12 alleges that he and Defendants entered into a "Manufacture Agreement" on or about June 1,
13 2005. (Id. ¶¶ 20, 21). According to Plaintiff, the Manufacture Agreement provided for
14 additional payments to Defendants as well as additional obligations on Defendants, such as
15 completion of the project at the end of 12 months and monthly photographic updates. (Id.
16 ¶¶ 23, 26). Plaintiff asserts that on receiving such updates regarding the progress of the
17 Aircraft, Plaintiff made twelve monthly payments of $2,999.25, as required under the
18 Manufacture Agreement, and two additional payments of this amount demanded by
19 Defendants pursuant to an "Addendum." (Id. ¶31). In total, Plaintiff estimates that he paid
20 Defendants at least $47,859.30 for labor and $87,855.75 for parts. (Id. ¶¶ 32-33). Sometime
21 in July of 2006, Plaintiff states that he was notified by Defendant Cheryl Opperman that
22 Defendant Christopher J.M. Opperman had passed away and that the Aircraft would not be
23 completed. (Id. ¶ 34). Plaintiff then traveled to Idaho to retrieve the Aircraft only to find "a
24 collection of almost entirely unassembled airplane parts" that were apparently for the subject
25 Aircraft. (Id. ¶36). Plaintiff alleges that either Defendants misrepresented their progress on
26 the Aircraft or that Defendants attempted to return a different aircraft than the Aircraft that
27 was bargained for. (Id. ¶¶ 37-39).

28

- 2 -

On September 25, 2006, Defendant Cheryl Opperman, represented by counsel, moved to dismiss Plaintiff's complaint for lack of personal jurisdiction and improper venue. (Dkt. #8). In her accompanying memorandum, Defendant Cheryl Opperman notified the Court that Defendant Christopher Opperman died of a heart attack on or around May 19, 2006. (Dkt. #9). On July 11, 2007, the Court denied Defendant Cheryl Opperman's motion to dismiss, finding that Plaintiff had established his prima facie burden of demonstrating the existence of personal jurisdiction, and that the District of Arizona was an appropriate venue to litigate this dispute. (Dkt. #16, pp. 8-9). Defendant Cheryl Opperman did not subsequently answer the complaint, and on October 12, 2007, the Court issued an order to show cause as to why the case should not be dismissed pursuant to Rule 41(a)(2) of the Federal Rules of Procedure. (Dkt. #17). Then, on October 16, 2007, Plaintiff applied for entry of default against Defendants pursuant to Rule 55(b)(2) (Dkt. #18); and on October 22, 2007, the Clerk of the Court entered default against Defendants pursuant to Rule 55(a) (Dkt. #20).

On October 22, 2007, the Court held a hearing on the Court's order to show cause. (Dkt. #21). Neither Defendant Cheryl Opperman nor her counsel of record appeared at the hearing. The Court noted that Plaintiff had applied for entry of default, but that the application was deficient since Plaintiff did not follow the two-step process under Rule 55. However, the Court also noted that the Clerk of the Court issued a notice of deficiency and then entered default. As such, the Court ordered Plaintiff to move the Court for default judgment pursuant to Rule 55(b)(2) by October 26, 2007.

On October 26, 2007, Plaintiff moved the Court for default judgment pursuant to Rule 55(b)(2). (Dkt. #22). Along with his motion, Plaintiff filed an affidavit of sum certain in the amount of $200,212.30, and a bill of costs for $485.00.[1] (Dkt. #s 23, 24). Because Defendant Cheryl Opperman previously appeared and moved the Court to dismiss the case, the Court then issued a minute order directing Defendant to file a response to Plaintiff's

---

[1]On February 1, 2008, the Chief Deputy Clerk of the Court ordered that the $485.00 sought by Plaintiff in his bill of costs be taxed by the clerk and made part of the judgment. (Dkt. #26).

- 3 -

motion for default judgment by close of business on November 30, 2007. (Dkt. #25). The Court stated that if Defendant failed to respond, the Court would deem the motion for default judgment unopposed. (Id.). Defendant failed to respond.

## II.    DISCUSSION

"Entry of default judgment is governed by FRCP 55 and is left to the trial court's sound discretion." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). After entry of default by the Clerk of the Court pursuant to FRCP 55(a), the Court may grant default judgment pursuant to FRCP 55(b)(2). See Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986) (discussing the sequential two-step process under FRCP 55). Factors that a district court may consider in exercising its discretion include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Id., 782 F.2d at 1471-72. After default has been entered by the Clerk of the Court, the factual allegations of the complaint are taken as true, except for those allegations relating to damages. See TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987). "A party seeking default judgment must state a claim upon which it may recover." Philip Morris USA, 219 F.R.D. 494, 501 (C.D.Cal. 2003). Furthermore, a plaintiff must prove all damages sought in the complaint. See Philip Morris USA, 219 F.R.D. at 498; see also Fed.R.Civ.P. 55(b)(2) ("In determining damages, a court can rely on the declarations submitted by the plaintiff.").

Plaintiff has satisfied the procedural requirements for default judgment against Defendants. Plaintiff (1) submitted an affidavit and application for entry of default on October 16, 2007 (Dkt. #18); (2) caused the Clerk of the Court to enter the default against Defendants on October 22, 2007 for failure to answer/defend (Dkt. #20); (3) stated that Defendants are not minors or incompetent, and are not in the military (Dkt. #22); and (4)

- 4 -

1  filed a statement regarding the amount of costs sought and an affidavit stating a sum certain
2  and containing calculations regarding the amount of loss (Dkt. #s 23, 24).  Moreover, the
3  Court notes that it directed Defendants' to respond to Plaintiff's motion for default judgment,
4  but Defendants failed to do so.  Finally, because Plaintiff does not request relief that differs
5  from or exceeds that prayed for in the complaint, the application for default judgment
6  complies with FRCP 54(c).  Accordingly, the Court need only analyze the Eitel factors to
7  determine whether default judgment is appropriate in this case.

8        In considering the Eitel factors, the Court takes all factual allegations in Plaintiff's
9  complaint as true, except for those relating to damages.  See Heidenthal, 826 F.2d at 917-18.
10 After reviewing the complaint and the affidavit submitted in support of Plaintiff's motion for
11 default judgment against Defendants, the Court finds that the Eitel factors favor granting
12 default judgment.  First, Plaintiff would clearly suffer prejudice if default judgment was not
13 granted because he would be without other recourse for recovery.  Second, it appears that
14 Plaintiff has adequately pled all eight counts in his complaint against Defendants: (1)
15 fraudulent misrepresentation, (2) violation of the Arizona Consumer Fraud Act, (3) breach
16 of contract, (4) breach of the implied covenant of good faith and fair dealing, (5) conversion
17 (count one), (6) conversion (count two), (7) negligence, and (8) punitive damages.  Third,
18 as Defendants failure to answer constitutes an admission to the averments contained in the
19 complaint under FRCP 8(d), the Court must accept these allegations as true.  As such, the
20 first three Eitel factor favor entry of default judgment against Defendants.

21       Pursuant to the fourth Eitel factor, the Court considers the amount of money at stake
22 in relation to the seriousness of Defendants' conduct.  See Eitel, 782 F.2d at 1471-72.  In
23 support of his claims, Plaintiff submits an affidavit detailing the expenses incurred by
24 Plaintiff in relation to the contractual agreements entered into between Plaintiff and
25 Defendants in the amount of $200,212.30.  (Dkt. #23).  Plaintiff's complaint and affidavit
26 states that Defendants entered into the subject agreements with Plaintiff, breached those
27 agreements, among other things, and thus were the direct cause of Plaintiff's detailed losses.
28

1  (Dkt. #s 1, 23). As such, the Court finds that this factor favors granting default judgment
2  against Defendants.

3  The fifth <u>Eitel</u> factor considers the possibility of dispute as to any material facts in the
4  case. However, on entry of default, as previously stated, all well-pleaded facts in the
5  complaint are taken as true, except those relating to damages. <u>See</u> <u>TeleVideo Sys., Inc.</u>, 826
6  F.2d at 917-18. Here, Plaintiff filed a well-pleaded complaint alleging the facts necessary
7  to establish its claims, Defendants failed to answer Plaintiff's complaint after the Court
8  denied Defendant Cheryl Opperman's motion to dismiss for lack of personal jurisdiction and
9  issued an order to show cause as to why the Court should not dismiss the case for failure to
10 answer/defend, and the Clerk of the Court entered default against Defendants. Although
11 there appeared to be some dispute concerning the agreement(s) entered into between Plaintiff
12 and Defendants mentioned in Defendant Cheryl Opperman's motion to dismiss for lack of
13 personal jurisdiction, no dispute has since been raised regarding the material averments of
14 the complaint. Defendants have been given a great deal of time, as well as multiple
15 opportunities, to answer Plaintiff's complaint and deny the averments contained therein.
16 However, Defendants have failed to do so, and have failed to comply with the Court's orders.
17 Thus, this factor also favors the entry of default against Defendants.

18 The sixth <u>Eitel</u> factor considers the possibility that default resulted from excusable
19 neglect. "Due process requires that all interested parties be given notice reasonably
20 calculated to apprise them of the pendency of the action and be afforded opportunity to
21 present their objections before a final judgment is rendered." <u>Philip Morris USA</u>, 219 F.R.D.
22 at 500-01 (citing <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950)).
23 In this case, Defendants are represented by counsel. Defendants received notice of Plaintiff's
24 complaint and filed a motion to dismiss for lack of personal jurisdiction. There is nothing
25 to indicate that Defendants did not also receive the Court's order denying Defendants'
26 motion to dismiss, the Court's order to show cause, Plaintiff's application for entry of
27 default, and the Court's order directing Defendants to respond to Plaintiff's motion for
28 default judgment. Defendants failed to answer Plaintiff's complaint and have not opposed

the instant motion, and in light of the Court's order to show cause, the order directing Defendants to respond or the Court would deem the motion unopposed, and the extended period of time that has elapsed since those orders, the possibility of excusable neglect appears to be remote. Accordingly, this factor favors granting default judgment against Defendants.

Finally, "the mere existence of Fed.R.Civ.P. 55(b) indicates that the seventh Eitel factor is not alone dispositive." Philip Morris USA, 219 F.R.D. at 501 (citing Cal. Sec. Cans., 238 F.Supp.2d at 1177). "Moreover, Defendant's failure to answer [Plaintiff's] Complaint makes a decision on the merits impractical, if not impossible. Under FRCP 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." Cal. Sec. Cans., 238 F.Supp.2d at 1177. This is exactly what occurred here, and thus the seventh Eitel factor does not preclude the Court from entering default judgment against Defendants. Accordingly, in light of the Eitel factors as a whole, the Court finds that default judgment against Defendants is appropriate.

Nonetheless, "[i]n granting default judgment, a court can award only up to the amount prayed for by a plaintiff in its complaint." Truong Giang Corp. v. Twinstar Tea Corp., 2007 WL 1545173, at *13 (N.D.Cal. 2007). Although a demand for relief must be specific under FRCP 8(a)(3), a "[p]laintiff's burden in 'proving up' damages on a motion for default judgment is relatively lenient. If proximate cause is properly alleged in the complaint, it is admitted upon default. Injury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled." Philip Morris USA, 219 F.R.D. at 498 (quoting Fed.R.Civ.P. 54(c)) (citing Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992)).

In the instant case, Plaintiff seeks from Defendants: (1) $47,859.30 in exchange for their labor to build the airplane, which was the subject of the contracts between the parties; (2) $5,450.00 to retrieve the airplane components, which Plaintiff had purchased, from Defendants in Idaho; (3) $6,641.00 to repurchase an auto pilot system and brake system for the airplane, which Plaintiff had previously purchased but Defendants failed to return to Plaintiff; (4) $9,500.00 to repair components of the airplane that Defendants destroyed, and

1  which Plaintiff had purchased; (5) $2,500.00 in labor costs to repair the damage caused by
2  Defendants to the airplane parts that Plaintiff had purchased; (6) $13,871.30 for tools and
3  supplies that Plaintiff had purchased and given to Defendants, but which Defendants failed
4  to return; (7) an increased cost of $37,250.00 above what had been agreed to under the
5  contract for the airplane's engine package; and (8) an increased cost of $77,140.70.00 for
6  labor above what had been agreed to under the contract to build the airplane.  (Dkt. #23).
7  Although the amounts detailed by Plaintiff in his affidavit were not all specifically mentioned
8  in the complaint, Plaintiff did demand each of the forms of relief that would entitle him to
9  such amounts in his complaint; and as such, Plaintiff's requested remedies do not differ from
10 the relief prayed for in his complaint.  (Compl., Dkt. #1, pp. 7-12).  In addition, Plaintiff
11 submitted a statement of costs that includes a service of process fee of $135.00 and a filing
12 fee of $350.00.  (Dkt. #24).  And the Court notes that the Clerk of the Court ordered that the
13 $485.00 be taxed by the clerk and made part of the final judgment.  (Dkt. #26).  After
14 reviewing Plaintiff's affidavit and bill of costs, the Court finds that Plaintiff's requested
15 damages against Defendants are reasonably calculated and naturally derive from the injuries
16 pled in Plaintiff's complaint.  Therefore, the Court grants Plaintiff's motion for default
17 judgment against Defendants for damages in the amount of $200,212.30, plus costs of
18 $485.00.

19 **Accordingly,**

20 **IT IS HEREBY ORDERED** that Plaintiff's motion for default judgment against
21 Defendants (Dkt. #22) in the amount of $200,212.30 (Dkt. #23), plus costs of $485.00 (Dkt.
22 #s 24, 26), is GRANTED for the reasons stated herein.

23 **IT IS FURTHER ORDERED** that the Clerk of the Court is directed to enter
24 judgment accordingly.

25
26          DATED this 14th day of April, 2008.
27
28                              _____
                                Mary H. Murguia
                                United States District Judge